UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FINGAL E. JOHNSON,

        Plaintiff,

v.

Case No. 1:10-cv-491

Hon. Robert J. Jonker

ANGELA MARTIN, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant Nancy Lange's motion for summary judgment (docket no. 23).

**I.    Background**

Plaintiff named three defendants in his complaint: Angela Martin, the Michigan Department of Corrections (MDOC) Health Care Quality Assurance Administrator; Nancy Lange, the Health Unit Manager (HUM) at the Lakeland Correctional Facility (LCF); and Robert Lacy, M.D., a doctor at LCF. HUM Lange has filed a motion for summary judgment on the claims against her.[1]

Plaintiff's verified complaint set forth the following allegations relevant to the present motion. On May 16, 2002, MDOC health care providers sent plaintiff to a podiatrist, Dr. Goosen, who found that plaintiff had flat feet, extreme overpronation, bunion deformity, hammertoe, and

---

[1] The court dismissed plaintiff's claim against defendant Martin for failure to state a claim. *See* Opinion and Order (docket nos. 8 and 9). Defendant Dr. Lacy has filed an answer with 27 affirmative defenses. *See* Answer (docket no. 27).

other foot problems. Compl. at ¶ 9. Dr. Goosen recommended that plaintiff be given custom orthotic devices. Compl. at ¶ 9. MDOC Dr. Lou Ann Dick denied Dr. Goosen's recommendation, but provided plaintiff with New Balance shoes that had a roller bar and support, insoles and directions to replace the shoes semi-annually. *Id.* at ¶¶ 9-10. The shoes and insoles provided by Dr. Dick made plaintiff's feet feel "a lot better." *Id.* at ¶ 10. However, when plaintiff arrived at LCF, he was unable to receive the same shoes, but instead was given either Riddell or Bob Barker shoes, which had no support and caused him as much damage as regular "state" shoes. *Id.* at ¶¶ 10-11. Plaintiff was also given the cheapest type of arch supports, which were ineffective and for which he was required to sign an agreement that the supports would last a year. *Id.* at ¶ 14. In addition, plaintiff has had problems obtaining replacement shoes on a regular basis. *Id.* at ¶¶ 12, 14.

Plaintiff's complaint explicitly referred to events which occurred in November 2009 through April 9, 2010. Compl. at ¶ 14. In November 2009, plaintiff informed LCF Health Care that his shoes were worn out. *Id.* However, Health Care shifted responsibility of replacing the shoes to the Prison Quartermaster, who knew nothing about providing plaintiff with shoes. *Id.* Plaintiff was forced to wear his same shoes for nearly a year until he received replacements (i.e., Riddell shoes) on April 9, 2010. *Id.* Plaintiff also alleged that he was forced to wear worn out shoes which resulted in his feet getting wet, cold and stinky, and developing a fungus on his feet and between his toes. *Id.* at ¶ 12. While plaintiff does not allege a time-frame for this incident, MDOC medical records reflect that it occurred in November 2008. *See* discussion in § II.B., *infra*. Plaintiff's complaint includes copies of two medical records from HUM Lange: a progress note from September 11, 2008, noting that HUM Lange received a memo from plaintiff "complaining that he needs specific type

2

shoes;" and a progress note from October 1, 2008, in which HUM Lange examined plaintiff's feet. See Progress Notes (docket no. 1-2 at pp. 6-7).

Plaintiff's complaint sets forth four counts relevant to HUM Lange's motion. Count I seeks relief against HUM Lange and Dr. Lacy because they subjected plaintiff to pain and suffering "by wearing no good shoes [sic] for an excessive amount of time" and failed to follow Dr. Goosen's recommendations. *Id.* at ¶ 16. Count II seeks relief against HUM Lange and Dr. Lacy for a violation of his Eight Amendment rights, because they "purposely ignored" his complaints of muscles spasms, and constant pain in his feet, ankles, knees and back. *Id.* at ¶ 17. Count III is similar to Count I, seeking relief against all defendants under the Eighth Amendment for deliberate indifference to his serious medical needs because they failed to follow Dr. Goosen's recommendations. *Id.* at ¶ 18. Finally Count IV seeks relief against all defendants under the Eighth Amendment for failing to treat plaintiff for his severe pain, failing to examine him and failing to explain "what was wrong." *Id.* at ¶ 19. Plaintiff seeks injunctive relief, declaratory relief and monetary damages.

## II.  HUM Lange's motion for summary judgment

### A.  Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

3

HUM Lange has moved for summary judgment on plaintiff's claims. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Eighth Amendment claim

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an

excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

HUM Lange has submitted an affidavit stating that as the HUM, she is responsible for the management of LCF's Ambulatory Health Care Unit, coordinating clinical care and providing direct clinical care when appropriate. Lange Aff. at ¶ 3 (docket no. 24-2). Prisoners requiring a special shoe are issued a permanent Special Accommodation Notice (SAN) by a medical practitioner or qualified health professional. *Id.* at ¶¶ 6-7. HUM Lange is not authorized by the MDOC to issue a permanent SAN. *Id.* at ¶ 8.

HUM Lange recounted the following events as reflected in plaintiff's medical records. *Id.* at 11. On September 11, 2008, LCF healthcare received a kite from plaintiff complaining that he needed a specific type of shoe. *Id.* at ¶ 12. The medical provider at LCF had previously examined plaintiff and determined that his foot condition could be treated with the use of insoles, arch supports and an athletic shoe. *Id.* Plaintiff received these items on August 26, 2008, but was not pleased with them. *Id.* at ¶ 13.

HUM Lange provided healthcare services to plaintiff on only one date, October 1, 2008. *Id.* at ¶ 14. Plaintiff had been issued a pair of "B Barker Velcro tennis shoes" consistent with his SAN. *Id.*[2] At that time, plaintiff stated that he did not like his tennis shoes and complained of

---

[2] The record does not include a copy of this SAN.

foot pain. *Id.* at ¶¶ 14-15. HUM Lange examined plaintiff's feet. *Id.* at ¶ 15. While plaintiff had bunions, there was no redness, swelling, or irritation at the bunion site bilaterally. *Id.* Plaintiff did not appear ill, did not appear in distress, and did not exhibit any irregular symptoms that would cause alarm. *Id.* at ¶ 16. Based on her examination, HUM Lange concluded that plaintiff did not appear to have a need for a different type of shoe and that his shoes appeared to be in serviceable condition. *Id.* Lange reminded plaintiff that he would need to contact the LCF Quartermaster when he needed replacement shoes. *Id.*

HUM Lange denied any involvement with plaintiff's claim that he was forced to wear worn out shoes resulting in wet, stinky feet with fungus between his toes. *Id.* at ¶ 17. Plaintiff sent a kite to healthcare about this condition on November 24, 2008, nearly two months after HUM Lange examined his feet. *Id.* According to plaintiff's medical records, he was seen on November 25, 2008 by RN Baker, who noted some wear on the side of plaintiff's shoe [sic], a bunion and a calloused area on plaintiff's right foot. *See* MDOC Nurse Protocol (Nov. 25, 2008) (docket no. 24-2 at p. 7). RN Baker also noted that plaintiff had not been compliant with using his cane, that he would give plaintiff a copy of his "details and shoe memo," and that plaintiff should contact the quartermaster regarding shoes. *Id.*[3] RN Baker also suggested that plaintiff be referred to a medical service provider. *Id.*

Finally, HUM Lange had no involvement in plaintiff's complaints regarding his efforts to obtain replacement shoes between November 2009 and April 9, 2010. Lange Aff. at ¶ 18.

---

[3] HUM Lange does not explain the "shoe memo." The court notes that plaintiff's complaint included a copy of a memo to LCF prisoners from HUM Lange, dated August 1, 2008, which referred to "shoe process." *See* Memo (docket no. 1-2 at p. 8). This memo appears to outline the procedure for obtaining a special shoe order from LCF Health Services. *Id.*

7

Plaintiff has submitted a declaration in opposition to HUM Lange's motion. However, plaintiff's declaration does not contradict the facts as set forth in HUM Lange's affidavit. *See* docket no. 29-1. Rather, the declaration refers to general background history of his foot problems, events in 2010 which are not relevant to this lawsuit, and arguments, i.e., that HUM Lange "subtly" suggests "that it does not matter what the examination of the Podiatric [sic] revealed" because "she has made the final determination" regarding his shoes, and that HUM Lange should be responsible for her staff's treatment of him in November 2008.

### 1. Failure to follow Dr. Goosen's recommendations (Counts I and III)

While plaintiff contends that HUM Lange "made the final determination" on his shoes, there is no evidence that she had the authority to issue a SAN for shoes or orthotics which were allegedly recommended by Dr. Goosen. Indeed, HUM Lange did not have authority to issue a SAN accepting or rejecting Dr. Goosen's recommendations. Moreover, plaintiff himself alleged in his complaint that an MDOC doctor, Lou Ann Dick, denied Dr. Goosen's recommendations on May 16, 2002, some six years *before* HUM Lange examined plaintiff. Accordingly, HUM Lange is entitled to summary judgment with respect to the claims that she failed to follow Dr. Goosen's recommendations.

### 2. HUM Lange's examination on October 1, 2008 (Counts I - IV)

Plaintiff's declaration does not contradict HUM Lange's statement that she treated him on only one occasion. The record reflects that HUM Lange did not violate plaintiff's Eight Amendment rights during that examination. It is undisputed that HUM Lange examined plaintiff's feet and noted bunions but no redness, edema or irritation of the bunion. *See* Lange Aff. at ¶¶ 14-15; MDOC Progress Note (Oct. 1, 2008) (docket no. 29-2 at p. 7). Based on her examination, HUM

Lange concluded that plaintiff did not appear to have a need for a different type of shoe and that his shoes appeared to be in serviceable condition. *See* Lange Aff. at ¶ 16; MDOC Progress Note (Oct. 1, 2008) (docket no. 29-2 at p. 7). While plaintiff apparently preferred to have new shoes, his preference does not form the basis for a federal constitutional claim. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). This action falls in the latter category. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id. See Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"). *See also*, *Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"). Accordingly, HUM Lange is entitled to summary judgment with respect to any Eighth Amendment violation arising from her October 1, 2008 examination of plaintiff.

### 3. Treatment by other LCF Health Care personnel (Counts I - IV)

HUM Lange's affidavit establishes that she had no involvement in plaintiff's treatment for wet feet in November 2008 or in his efforts to secure replacement shoes from November 2009 through April 9, 2010. Lange Aff. at ¶¶ 17-18. Plaintiff has provided no evidence to contradict her affidavit. Rather, he argues that HUM Lange should be responsible for the actions

of other LCF Health Care personnel. It is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Dep't. of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). A supervisor's liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). There is no evidence that HUM Lange had any involvement in the other incidents alleged in plaintiff's complaint. Accordingly, HUM Lange is entitled to summary judgment on claims arising from the actions of other LCF Health Care personnel in 2008, 2009 and 2010.[4]

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendant HUM Lange's motion for summary judgment (docket no. 23) be **GRANTED** and that she be dismissed from this action.

Dated: June 22, 2011 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

---

[4] The court having found no constitutional violations by HUM Lange, it is unnecessary to address her claim for qualified immunity.

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).