UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FINGAL E. JOHNSON,

        Plaintiff,

v.

ANGELA MARTIN, *et al.*,

        Defendants.
                              /

Case No. 1:10-cv-491

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant Robert Lacy's motion for summary judgment (docket no. 52) and "Partial motion for summary judgment pursuant to Fed. R. Civ. P. 56 regarding involvement up to and including March 31, 2009" (docket no. 58).[1]

    **I.**    **Background**

        Plaintiff named three defendants in his complaint: Angela Martin, the Michigan Department of Corrections (MDOC) Health Care Quality Assurance Administrator; Nancy Lange, the Health Unit Manager (HUM) at the Lakeland Correctional Facility (LCF); and Robert Lacy, M.D., a doctor at LCF. The court previously dismissed defendants Martin and Lange. *See* Opinion and Order (docket nos. 8 and 9); and Order Approving Report and Recommendation (docket no. 46).

---

[1] Dr. Lacy is represented by two different law firms. The Juip Richtarcik Law Firm represents Dr. Lacy for claims arising through March 31, 2009. *See* Partial motion for summary judgment (docket no. 58). The law firm of Chapman and Associates, P.C., represents Dr. Lacy for claims arising after April 1, 2009. *See* Motion for Summary Judgment at fn. 1 (docket no. 52).

Plaintiff's verified complaint set forth the following allegations relevant to the present motion. On May 16, 2002, MDOC health care providers sent plaintiff to a podiatrist, Dr. Goosen, who found that plaintiff had flat feet, extreme overpronation, bunion deformity, hammertoe, and other foot problems. Compl. at ¶ 9. Dr. Goosen recommended that plainiff be given custom orthotic devices. Compl. at ¶ 9. MDOC Dr. Lou Ann Dick denied Dr. Goosen's recommendation, but provided plaintiff with New Balance shoes that had a roller bar and support, insoles and directions to replace the shoes semi-annually. *Id.* at ¶¶ 9-10. The shoes and insoles provided by Dr. Dick made plaintiff's feet feel "a lot better." *Id.* at ¶ 10. However, when plaintiff arrived at LCF, he was unable to receive the same shoes, but instead was given either Riddell or Bob Barker shoes, which had no support and caused him as much damage as regular "state" shoes. *Id.* at ¶¶ 10-11. Plaintiff was also given the cheapest type of arch supports, which are ineffective and for which he was required to sign an agreement that the supports would last a year. *Id.* at ¶ 14. In addition, plaintiff has had problems obtaining replacement shoes on a regular basis. *Id.* at ¶¶ 12, 14.

Plaintiff's complaint referred to events which occurred in November 2009 through April 9, 2010. Compl. at ¶ 14. In November 2009, plaintiff informed LCF Health Care that his shoes were worn out. *Id.* However, Health Care shifted responsibility of replacing the shoes to the Prison Quartermaster, who knew nothing about providing plaintiff with shoes. *Id.* Plaintiff was forced to wear his same shoes for nearly a year until he received replacements (i.e., Riddell shoes) on April 9, 2010. *Id.* Plaintiff also alleged that he was forced to wear worn out shoes which resulted in his feet getting wet, cold and stinky, and developing a fungus on his feet and between his toes. *Id.* at ¶ 12.

Plaintiff's complaint sets forth four counts relevant to Dr. Lacy. Count I seeks relief against HUM Lange and Dr. Lacy because they subjected plaintiff to pain and suffering because he had to wear "no good shoes [sic] for an excessive amount of time" and failed to follow Dr. Goosen's recommendations. *Id.* at ¶ 16. Count II seeks relief against HUM Lange and Dr. Lacy for a violation of his Eight Amendment rights, because they "purposely ignored" his complaints of muscles spasms, and constant pain in his feet, ankles, knees and back. *Id.* at ¶ 17. Count III is similar to Count I, seeking relief against all defendants under the Eighth Amendment for deliberate indifference to his serious medical needs because they failed to follow Dr. Goosen's recommendations. *Id.* at ¶ 18. Finally Count IV seeks relief against all defendants under the Eighth Amendment for failing to treat plaintiff for his severe pain, failing to examine him and failing to explain "what was wrong." *Id.* at ¶ 19. Plaintiff seeks injunctive relief, declaratory relief and monetary damages.

## II. Dr. Lacy's motions for summary judgment

### A. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

3

Fed. R. Civ. P. 56(a).  Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Eighth Amendment claim

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### 1. Dr. Lacy's involvement with plaintiff

The MDOC medical records reflect that Dr. Lacy saw plaintiff four times: August 14, 2008; January 16, 2009; March 3, 2009; April 28, 2009. Affidavit of Robert D. Lacy, M.D. at ¶¶ 6, 12-14; MDOC Medical Records (docket no. 55 at pp. 2-14, 40, 43-49, 51-52. In addition, the doctor reviewed plaintiff's file and entered a special accommodation order on November 13, 2009, which resulted in a new special accommodation notice (SAN) issued on November 16, 2009. Lacy Aff. at ¶ 18; MDOC Medical Records (docket no. 55 at pp. 69-72).

On August 14, 2008, Dr. Lacy evaluated plaintiff for the first time due to his enrollment in the Cardiovascular Chronic Care (CCC) Clinic. MDOC Medical Records (docket no. 55 at pp. 2-14). Plaintiff did not complain of leg cramps or pain at this time. *Id.* After the examination, Dr. Lacy issued a SAN for "Special Garment (arch supports)." *Id.* at pp. 12-13). At that time the SAN also included a prescription shoe (athletic shoe) and insoles for shoes size 11. *Id.* at p. 12. On August 26, 2008, plaintiff received the arch supports for size 11 shoes. *Id.* at p. 16.

On January 16, 2009, Dr. Lacy evaluated plaintiff for the second time. *Id.* at p. 40. This evaluation involved a rash on plaintiff's arms. *Id.* Plaintiff reported that he would get a rash once a year and it would go away with cream. *Id.* Plaintiff was diagnosed with dermatitis and

prescribed a steroid cream. *Id.* The issue of plaintiff's shoes did not come up and was not addressed during this appointment. *Id.*; Lacy Aff. at ¶ 12.

On March 3, 2009, Dr. Lacy evaluated plaintiff for the third time. MDOC Medical Records (docket no. 55 at pp. 43-49). Plaintiff was evaluated at the CCC Clinic for complaints including leg cramps and PAD (peripheral artery disease). *Id.* at p. 45. Dr. Lacy determined that plaintiff should continue to receive his current pain medication and ordered Baclofen for plaintiff's leg cramps (muscle spasms). *Id.* at pp. 43-49; Lacy Aff. at ¶ 13. The doctor also ordered a follow up visit for plaintiff's complaints of muscle cramps, fatigue and constipation. MDOC Medical Records (docket no. 55 at p. 49). On March 9, 2009, Cassandra R. Sammons, RN, noted that "pt doesn't want the Baclofen that was ordered." *Id.* at p. 50.

On April 28, 2009, Dr. Lacy examined plaintiff regarding many complaints including, constipation, fatigue, and muscle cramps. *Id.* at pp. 51-52. Plaintiff reported that he refused to take the Baclofen for his muscle spasms because he thought he was being used as a "guinea pig." *Id.* at p. 51. Plaintiff complained of foot pain even though he wore athletic shoes and "insist[ed] that we take him to podiatry." *Id.* In his affidavit, Dr. Lacy stated that "[p]laintiff did not require a referral to a specialist for his foot conditions; his conditions were not uncommon and were properly treated with athletic shoes." Lacy Aff. at ¶ 14.

On November 13, 2009, Dr. Lacy reviewed Plaintiff's chart for a SAN for shoes. MDOC Medical Records (docket no. 55 at pp. 69-72). In a progress note from that date, Dr. Lacy observed: that medical records reflected that plaintiff should have had a SAN for athletic shoes; that a request was made on October 21, 2008; that no response was made to the request from the Regional Medical Officer (RMO); and that plaintiff had a previous SAN for athletic shoes from

7

August 24, 2005 due to "hammer toes." *Id.* at p. 69.  After reviewing the file, Dr. Lacy issued an order for a special accommodation of athletic shoes for hammer toes. *Id.* at p. 70.  The special accommodation was approved by the RMO the same day. *Id.* at p. 71.  A SAN issued on November 16, 2009 reflected the following accommodations: a prescription for athletic shoes from November 16, 2009; discontinuance of a special garment (arch supports) as of November 16, 2009; and discontinuance of "insoles for shoes size 11" as of November 16, 2009. *Id.* at pp. 72-73.

In his affidavit, Dr. Lacy explained his medical decision to issue the SAN as follows:

> As a general rule, an inmate receives insoles and/or arch supports *or* the inmate receives athletic shoes.  Inmates did not typically receive both because it was not generally necessary as the athletic shoe itself provides additional support. Therefore, when I enter special accommodations for athletic shoes, I typically cancel any pending accommodations for insoles or arch supports.

Lacy Aff. at ¶ 19 (emphasis in original).

Dr. Lacy further explained:

> Once an order for athletic shoes is prescribed, it is approved by the Regional Medical Director and then the inmate is sent to the Quartermaster who measures the inmate's feet for proper fit and orders the shoes; health care is no longer involved in the process.  Instead, all issues regarding ordering, fitting and replacement of work shoes are handled by the Quartermaster.  Thus, when Plaintiff returned to medical complaining that he had not received athletic shoes, he was advised to kite the Quartermaster.

*Id.* at ¶ 20 (internal citation omitted).

As of January 2010, plaintiff had special accommodations for athletic shoes, arch supports and a cane, with the arch supports having been ordered by Gary L. Baker, RN. *Id.* at ¶ 21; MDOC Medical Records (docket no. 55 at p. 76).  Plaintiff was provided new arch supports on January 7, 2010.  Lacy Aff. at ¶ 21; MDOC Medical Records (docket no. 55 at p. 77).

    **2.**    **Failure to follow Dr. Goosen's recommendations (Counts I and III)**

8

Plaintiff alleged in his complaint that an MDOC doctor, Lou Ann Dick, denied Dr. Goosen's recommendations on May 16, 2002. This alleged denial occurred more than six years before Dr. Lacy first examined plaintiff on August 14, 2008. Dr. Lacy cannot face liability under § 1983 for a medical decision made by another doctor years before Dr. Lacy first examined plaintiff.

> Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior. *See Murphy v. Grenier*, 406 Fed.Appx. 972, 974 (6th Cir.2011) (unpublished opinion) ("Personal involvement is necessary to establish section 1983 liability"); *see also Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir.1991) (noting that personal liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants").

*Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). Here, the alleged wrongful action was Dr. Dick's decision not to follow a podiatrist's recommendation back in 2002. Dr. Lacy took no part in that decision. Accordingly, Dr. Lacy motions for summary judgment should be granted as to plaintiff's claim that Dr. Lacy failed to follow Dr. Goosen's recommendations.

### 3. Failure to treat leg cramps

The medical records reflect that Dr. Lacy examined plaintiff twice for leg cramps and prescribed medication for that condition. MDOC Medical Records (docket no. 55 at pp. 43-52). The records further reflect that plaintiff refused to take the medication prescribed to treat his leg cramps. *Id.* at pp. 50-52. Under these circumstances, Dr. Lacy was not deliberately indifferent to plaintiff's leg cramps. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). This action falls in the latter category. "Where a prisoner has received some medical attention and the

9

dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id. See Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"). *See also*, *Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"). Furthermore, while plaintiff complains about suffering from leg cramps, the record reflects that he refused the prescribed medication. "Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment." *Wright v. Genovese*, 694 F.Supp.2d 137, 155 (N.D.N.Y. 2010). A prisoner's non-compliance with the directions of the medical staff undermines conclusory claims that the medical staff was deliberately indifferent to the prisoner's serious medical needs. *Id.* at p. 157, *citing Jones v. Smith*, 784 F.2d 149, 151-52 (2d Cir.1986) (plaintiff's history of declining treatment by prison doctors undermined his claim that they were deliberately indifferent in failing to treat his back issues). Dr. Lacy is entitled to summary judgment with respect to plaintiff's claim that he was deliberately indifferent to his leg cramps.

### 4. Failure to treat plaintiff's alleged pain

Dr. Lacy examined plaintiff four times during a span of about eight months. As discussed, *supra*, the doctor prescribed plaintiff medication to treat a presumably painful condition (leg cramps) which plaintiff refused. To relieve plaintiff's foot pain, Dr. Lacy issued a SAN for arch supports in August 2008. When Dr. Lacy reviewed the file in November 2009 and saw that

10

plaintiff's earlier SAN for athletic shoes had not been approved, the doctor investigated the file, noted that plaintiff had previously been issued a SAN for hammer toes, and wrote a new SAN for the athletic shoes. While plaintiff may disagree with Dr. Lacy's determination that he only required athletic shoes to treat his hammer toes and objected to the style of the shoe, such disagreement does not constitute deliberate indifference. *See Woodberry*, 146 Fed. Appx. at 977; *Owens*, 79 Fed. Appx. at 161. Finally, there is no evidence that any alleged delay in plaintiff's receipt of the athletic shoes was caused by the deliberate indifference of Dr. Lacy. On the contrary, the record reflects that the doctor took action in November 2009 to ensure that plaintiff received the athletic shoes. MDOC Medical Records (docket no. 55 at pp. 69-73).

### III.     Recommendation

For the reasons set forth above, I respectfully recommend that defendant Robert Lacy's motions for summary judgment (docket nos. 52 and 58) be **GRANTED** and that this action be **DISMISSED**.

Dated:  August 28, 2012                              /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).